Good morning. We're pleased to hear argument in Lincoln v. Director. Mr. Camden, whenever you're ready. If it may please the court, I am Gregory Camden, here on behalf of Stephen Lincoln, petitioner. This is a matter that arises under the Longshore and Harbor Workers Compensation Act, specifically 33 U.S.C. section 928A, dealing with the fee shifting of attorney's fees. In this matter, the claimant submitted a claim on May 24th, 2011. A mere two days later, the employer filed an L.S. 207, which is a Department of Labor form called a Notice of Controversion. And the employer also filed on the same date, L.S. 208, which is a Department of Labor form called a First Report of Injury. On June 14th, 2011, the Department of Labor served notice on the employer of the claim. Clearly, they already had notice, so they wouldn't have filed the previous documents. On July 8th, 2011, the employer scheduled the claimant for an independent medical examination by a doctor of their choosing and paid the claimant $1,256.84, which they claimed represented one week of compensation under the Longshore and Harbor Workers Compensation Act. Do you dispute that, that in fact it constituted one week of that compensation? No, Your Honor, I do not dispute that. Okay. Let me just ask you a question up front, because math is not my strong suit, which is probably why I'm sitting up here on the bench instead of doing something more productive. But at the J at page 25 where the form is set out calculating this average weekly wage and the amount of compensation, that is $2,633.75 multiplied by two-thirds. At least as I calculate that number, it doesn't come out to this $1,256. Am I wrong? No, you are not wrong. There is a maximum compensation rate under the Longshore and Harbor Workers Compensation Act. It changes every October 1st. Okay. At the time of this claim, that was the maximum compensation rate. So the average weekly wage was so high, the calculation of it really was immaterial. I see. And you will see in the employer's brief they argued that I only provide them with 2010 W-2s. They couldn't calculate the 52 weeks before the average weekly wage. But how do you get around the words in Section 928A that talks about any compensation, declines to pay any compensation? I mean, the amount of compensation is likely to always be in dispute. First the form. The $1,256 is more than nothing, isn't it? First and foremost, Your Honor, they filed a notice of controversy. And if you look at 928A, if the employer controverts the claim before the 30th day after being put on notice by Department of Labor, then 928 is triggered. But the statute doesn't speak in terms of controversy. It speaks in terms of declines. Declines to pay. That is correct. And that's what the notice of controversy was. It was the employer's filing a form declining to pay. Well, not really. I mean, their only contention was they weren't sure if they were the employer. They admitted that the client was entitled to payment by somebody. They just weren't sure whether or not they were the employer who should be on the hook. Agreed, Your Honor, and that is decline to pay. And, in fact, if you look at the- They did pay. Not at that time. They did not, Your Honor. At the time they filed the notice of controversy, that triggered 928A right there. What they paid later is immaterial in our opinion. So what do you say they should have paid under 928A? Under 928A, what should have happened in this case, Your Honor, and very well could have happened, is the employer could have accepted the claim and paid benefits on the April 11, 2011, audiogram pursuant to 914A and 914B. In 914B, it says, the first installment of compensation shall become due on the 14th day after the employer has been notified pursuant to Section 12, or the employer's knowledge of injury or death, on which date all compensation then shall be paid. If the employer had begun paying at that time, their IME was on July 15, 2011, the report's date, July 19, they would have owed 14 weeks of compensation that date that they would have paid. According to their IME, my client was owed 20 weeks of compensation. Right, but this is just a safe harbor provision for attorney's fees, isn't it, under 928A? 928A is determining when the employer is responsible for attorney's fees. Right, right. And it provides the employer a safe harbor if they provide compensation, any compensation.  And they could have begun paying the claim, and they could have paid out the 14 weeks as of the date of their IME. They still would have owed 6 weeks. Had they done that, then they could have been. Yeah, but where does it say they have to pay the claim? It says declines to pay any compensation on the ground that there is no liability for compensation. It says that the employer declines to pay any compensation on or before the 30th day after receiving written notice of the claim. If you look to 928B, it says if the employer or carrier pays or tenders payment of compensation without an award pursuant to Section 14A and 14B of the Act. All right, but that references the informal conference proceeding, and that didn't take place in this case. That is correct. It never got to an informal conference. Right. So I guess what I'm asking you is, if you were writing the opinion of the court in your favor, how would you deal with the plain language of 928 that talks about the payment of any compensation? How would you explain that away? The employer denied to pay any compensation when they didn't pay the entire claim that was filed. They, under this Act, are to begin immediate payments to the claimant pursuant to Section 14A and 14B. They did not. They chose to controvert the claim. They then turned around and paid one week of compensation. You have to look back on the employer's intent in this matter. This employer- You mean any injury is serious, but what you're dealing with here is a 0.5 percent binaural hearing loss, 0.5 percent. I don't mean to minimize any injury, but that kind of injury, as opposed to the loss of a hand or an arm or some serious back injury or what have you, if you were making this argument in the case of someone who'd lost an arm, I think you'd have a stronger point. You might be able to bring it within the ambit of the Green decision. But here, as I understand it, that was a maximum compensation rate for this particular amount of loss. I don't mean to minimize the injury, but it isn't the same as some of the more serious workplace injuries we've come across, where a purely nominal amount might fail the statutory test. First of all, Your Honor, it wasn't 0.05 percent. That's the number that Ceres picked. The employer chose that number out of thin air and applied it not just to this case, but to dozens of other cases, as we've shown you in the appendix. So what did the audiogram show? The audiogram from the employer showed a 10 percent loss. That's their best evidence, is 10 percent. And here's the kicker. The employer, in their notice of controversy, says, we're having an IME done, and then we're going to pay. Well, they had the IME done, and they didn't pay. Why didn't they? Because they never had the intention to pay. The employer had that report in their hands in July, and they did not pay. Instead, they went into settlement negotiations. So if the employer had intended to accept the claim, their best evidence was that report from the IME doctor, and they did not pay. Well, the reason it went into settlement negotiations is because your client had a different view of the hearing loss, right? That had to be resolved. That is true. But the employer, if they intended to accept the claim, could have paid what their IME said. They should have paid what they knew was due, and they did not pay what they knew was due when they got that IME. But you're going to set in motion reverse incentives, aren't you? Not because Congress wanted with this provision to actually encourage employers to pay something. And if they go ahead and do pay something, I mean, the amount, of course, is likely to be in dispute, and that's what 928B, I guess, is about. But if we say, well, you're still liable for attorney's fees in a circumstance like this, in the face of this language, aren't we discouraging employers from paying? And that was the very result that Congress wanted to hit off. Your Honor, actually, it's the opposite. If you allow series to get away with this, in every case that's filed, the employer is going to pay one week of compensation, cut the man off, and make him go prove his case in court. So you're going to have the opposite effect. Additionally, with your comment about this being a minor case, the Act does not differentiate between an arm injury for attorney's fees or a hearing loss case or a back injury or a permanent total disability claim. 928A talks about all cases, not minor versus major cases. The Supreme Court's already shown concern with this type of argument being made. As this case was going forward, in Roberts v. Sealand Services, decision of March 20, 2012, the Supreme Court debated a very similar pattern. In Roberts, the disagreement was over the date of maximum compensation rate and when it went into effect under the Long-Term Unemployment Compensation Act. Justice Sotomayor, on behalf of the majority, pondered the situation where the employer can hedge, that's her word, hedge, against later finding a liability by paying the smallest amount to which the Act might entitle an employee but controverting liability as to the remainder. It was this concern that caused Justice Sotomayor to find the dissent's approach unworkable. This, too, approach put forward by the- Your position is, it seems to me, is further weakened by the fact that you really didn't avail yourself of the remedial scheme that the Act afforded you. I don't know why you didn't request an informal conference. If you were disputing the amount that's paid, I don't think the place to dispute that is at 928A, but you should have requested an informal conference and said, Look, we're due more, but that was, you know, that was never done and it's kind of awkward to come before the court saying that the employer's not dealing fairly with you when you don't avail yourself of the basic mechanism of the Act, which is to have an informal conference, hear what the director recommends. The employer, if it lowballs it, can be liable for attorney's fees if in litigation the amount proves to be higher than that which the employer offered. But you didn't do any of that and that was open to you, which leads me to believe that this is kind of more about attorney's fees than it is about the particular individual's recovery. Your Honor, actually, the employer alleges in their brief that I immediately requested a hearing and filed an LLC team. That's not true. LLC team was never filed. Did you request an informal hearing? I didn't have an opportunity to request an informal conference. As a practical matter for the Department of Labor, if the employer is scheduling an independent medical examination, the Department of Labor will not schedule an informal conference until they have that report so they can look at all the evidence. After the report was turned over to me, the employer began settlement negotiations, so it never reached the point for me to request an informal conference. And contrary to what the employer alleges, I never requested a hearing and never tried to skip the informal conference level. The answer is you did not. I did not request an informal conference because it didn't reach that point. Well, it was because you decided to go the settlement route, right? That is correct. We did decide to go the settlement route, yes, Your Honor. In closing, in the Roberts decision, Justice Ginsburg defended her approach, saying an employer could never successfully execute much less attempt a strategy posed by the majority. Clearly, she was wrong, or we wouldn't be here today. Justice Ginsburg then goes on to say the Act does not permit an employer to pay any amount it likes and controvert the remainder. Hopefully, she's not wrong again. I believe Justice Sotomayor asked the right question, the Roberts majority opinion, and I believe this answers your question, Justice Wilkinson. Perhaps Justice Ginsburg gives Sealand the benefit of the doubt because the voluntary payments were close to Roberts' actual entitlement. But if that is so, then how close is close enough? And that's the question this court will have to answer today. Thank you. You also have some time for rebuttal. Thank you. Mr. Postol. Good morning, Your Honors. Larry Postol for a series. Let me start by asking three questions, sort of turning it around. If .05 is not enough, then how much would be enough to be out of 28A? Obviously, the statute itself says any compensation, but even if you want to ignore the statutory language, then the question for Mr. Cameron would be, okay, what amount would have been enough to get us out of 28A? His answer is pay the full claim. But this court addressed that in the Virginia Terminal Sealand case. The court said, look, that doesn't make any sense because if the employer to get out of 28A has to pay the full claim, then 28B never applies because they would have always paid the full claim. The whole point of 28A, 28B was, to me, very simple. It said, look, if you're just going to dispute whether there's an injury, then obviously you're never going to resolve it. You're going to end up in litigation. So if you're wrong, there was an injury, we're going to make you pay. But if you agree there was an injury and you pay any compensation, then we want you to have a simple procedure. You go to an informal conference and you get a recommendation. And the Roberts case actually favors what happened in this case and the literal reading of the statute. The Roberts case says workers' comp is supposed to be a voluntary system. Well, that's right. We're not supposed to both run and go get attorneys to start the system going. The employer is supposed to voluntarily pay something and try to make the system work. Secondly, if there is a dispute, we're not supposed to go to litigation. We're not supposed to have attorneys. We're supposed to have an informal conference and the Department of Labor makes a recommendation. The fact is most employers for most informal conferences don't even send an attorney because it's an informal proceeding. There's nothing on the record. Basically, you present your evidence. Any lay person could do it. And the Department of Labor makes a recommendation. But you're not completely in saintly clothing here because the $1,200 was not exactly what my ‑‑ I mean, it's something, and I don't mean to minimize it, but it wasn't a particularly generous amount. Well, here's the problem. You're scraping by with the minimum you think you can scrape by with. Well, here's the problem. We don't know what our IME is going to show. We've had cases where we've paid the $1,200, and our IME comes back and says there's no hearing loss. It's 0%. So we basically sent a check for $1,200 for nothing. So I understand it's obviously not the full claim. But 28A doesn't require us to pay the full claim because if that was a requirement, then there'd be no reason to have 28B because you'd never have a dispute. Initially, you indicated that you would pay 1%. How did you get down to 0.5%? Because we had cases where, in fact, we ended up paying, and it ended up being 0. So I looked at it and said, well, actually, you can have it 0.05%. So why pay 1%? And if we pay any compensation, that gets us out of it. I mean, the reality is when we pay the money, we have no idea what the actual amount of hearing loss is. I mean, that's just the way it is because until we get our IME, it could be 0. But 928B is all about. Exactly. So we pay something, and we send it to LS207 and say, look, we admit it's a work-related hearing loss. We're not disputing that. So this isn't 28A. We pay some compensation. We may actually be overpaying because it may be a 0% hearing loss, but we don't know. But we're going to pay something, and then if we're wrong, you can ask for an informal conference, and the Department of Labor will make a recommendation. Mr. Camden says that once you got the IME that showed a 10% hearing loss, you were then duty-bound to pay that 10%. Is he right? No, because there's nothing in the statute that says that. The statute says pay any compensation, and you're then in 28B. And if he had told us right at the beginning, I'll take 10%, we're done, we would have paid the 10%. Unfortunately, he doesn't always work that way. In this case, ultimately, he did take the 10%. But sometimes he doesn't do that. Sometimes he says, no, I want to litigate it. Is there some figure that is so low, in your view, this is sort of the green case, is there some figure that's so low of taking the focus away from the word any and putting it on compensation? Is there some figure that's so low that it really fails to qualify as compensation in any meaningful sense? Well, first of all, we're all assuming the green case is right. I'm not convinced it was. I mean, I think you could make an argument that $1 is any. But to answer your question. You wouldn't want to make that argument, would you? No. In fact, that's why I switched and basically said, you know what, okay, we're going to face that argument. Let's take it out. I'll pay what is, or the company will pay the minimal amount that is compensation. But I'm asking you in this case. Sure, in this case. Is there some figure that is so low that it wouldn't qualify as compensation under any meaningful sense of the word? Sure. I think if we went below the half a percent, we probably would have done that because you can't have a hearing loss below half a percent. So basically the argument we would have faced is if we paid a compensation amount that actually might not, you know, that it's impossible for that to be what's owed, then you could argue that's not compensation. So we paid what could have been. I mean, our IME could have come back. Your argument has to be at this very early stage. You probably don't know what the medical evidence is ultimately going to reveal. Exactly. With respect to the extent of the injury. And as I said, we've had cases where they came back zero and we just wasted money. But the fact is, I mean, we learned that the attorney fees quickly rack up. So, frankly, paying a half percent to make sure that we end up with an informal conference and not a, you know, a running award of attorney fees is cheaper. So, yes, there's some cases we just blew $1,200. But that's what the statute is meant to allow is that the informal conference couldn't be easier. You just write a letter to OWCP and say I want an informal conference. They usually hold them within 30 days or less. The informal conference is like 30 minutes or less. And you're done. And you get a recommendation. And the whole point is to avoid litigation, we're going to get a neutral party, the Department of Labor, to make a recommendation. And, you know what, claimant, if you can't, if the employer is willing to follow that recommendation, then any further litigation is on your dime. I mean, it's, I mean, Congress was pretty smart when they put this provision in there. It's exactly intended to avoid litigation. And the employer in this case did exactly that to try to avoid litigation. I hear you say that the 0.5% is the floor with respect to a compensable hearing loss. First of all, can you actually measure anything below 0.5%? Or are you saying that anything below 0.5% is simply not compensable? I don't think that you can mathematically come up with something lower than half a percent based on an audiogram. Okay. That is the floor. I believe so, yes. I actually never, I've never been so cheap to figure out if I actually could do a quarter of a percent. I knew one week, half a percent is one week. One week of compensation is clearly compensation. Now, you said you would essentially have blown some amount of money. I recognize the practicalities of trying to extract money once paid, but you could go back and say, no. No. There's nothing in the statute allows you to get compensation back you paid. Well, that may be, but that doesn't necessarily mean that you're out of luck as a matter of some other judicial remedy other than the statute. There have been a number of court cases where employers have tried to get their money back. They've never succeeded. They've tried under the Longshoreman Act. They've tried to go outside the Longshoreman Act. Every time the courts have said there's nothing in the statute that says they have to repay money you paid. So, unfortunately, there is no way to get that money back. So it leads you to be risk averse. Yes. And to follow what Congress intended, to go to an informal conference. The interesting thing about this statute is you look at it, and it was very carefully put together, and there are all kinds of tradeoffs in the statute. Yes. I mean, it's just the whole statutory scheme speaks of a set of very intricate compromises between an employee's interest and an employer's interest. And neither side really got, I'm sure, everything it wanted out of this statute. It was probably a tooth and nail battle, a statute like this indicates it. And so there's a danger, I think, I guess, in us starting to tinker with it because all the different parts are interrelated. Well, that's exactly right. That's the other aspect of it. A and B, they don't stand independently. They're all intertwined. Yes. And, I mean, Mr. Cameron, I know, would like the court to find any time there's a claim, I should get an attorney fees. But that's not what Congress said. Congress actually said, you know, if you pay some comp, you're going to B. And B, if the employer files an informal conference, you don't get attorney fees. The claimant has to pay it, which, by the way, wouldn't be the world's worst result in this case for the claimant either. If Mr. Cameron went after the claimant, the claimant recovered, I think it was $23,000, and he wanted $3,400 for attorney fees. Well, that's actually not, you know, that's much less than the one-third you get in tort actions. Let me also address the Roberts case. It has, as I said, most of what Roberts said is actually in our favor because it talks about a voluntary system, you know, informal OWCP. The footnotes were basically dual footnotes between the majority on something that never happened. So Justice Ginsburg wanted the definition of when there's an award to be when you receive compensation. The majority said, no, it's when you are entitled to compensation, not when you actually receive compensation. Then they got into the two footnotes saying, well, what if they paid a small amount? And the irony is the claimant citing the dissent, the actual majority in footnote six, says exactly what is incorrect, which is you can pay some compensation and then file a 207 and say, you know, we dispute the full amount of your claim. We're paying you something, but we're not going to do it. So I don't see how Roberts, which deals with the maximum comp rate, and these footnotes deal with something the court rejected. I mean, they're all dealing, the footnotes are dealing with this hypothetical of what if we define it. Let me ask you a question just because we kind of come at these things a little bit practically sometimes. If we accepted the appellant's argument, how would we know? Is there any way we could know what exactly an employer would have to offer in order to avail himself of a safe harbor? That was my first question. I don't know, because if it's not half a percent, that's going to be a subject of litigation. Well, I don't even know, where would you draw the line and what would you measure it by? You'd have more appeals like this one. Yes. Because we wouldn't, my problem is just looking down the road, we wouldn't know where to draw the line. I mean, how much does an employer have to pay, $1,000, $1,500, $2,000, $2,500? Well, it depends. It depends on what the medical evidence shows. Well, what did the medical evidence show at that particular time? Well, we don't know that. We'll have to litigate that on appeal. We'll have to, I mean, the point is, if we rule this invalid, we're left in a standardless seat, in which we're going to be litigating medical evidence, litigating amounts, all on something that was supposed to be the most cut and dried portion of the statute, and we're going to turn 928A into a fine of litigation. That's my concern, just practically. That's a very valid concern, but I'd make one additional argument, and that is the statutory language doesn't even give us that option because the statutory language says, rather straightforward, if you pay any compensation, you go into B and you have an informal conference. Congress recognized there would be disputes because if there weren't disputes, we wouldn't need 28B at all, right? So Congress recognized whether we pay half a percent, one percent, three percent, not only is there a practical problem. You made that point previously, and I understand that. Okay. Do you have any additional points you want to make? I don't think so, Your Honor. Well, no, you're right. I think I've made it. We have no further questions. Thank you, Your Honor. All right. Mr. Camden, I'll pose a question to you. If we say that this was insufficient, then it leaves me with the question of, well, I don't know, what would be sufficient? And is that something we're going to just have to litigate out on a case-by-case basis? Your Honor, I am here regarding Mr. Lincoln's case, and I'll try again to explain how the statute would apply to Mr. Lincoln's case and how this should have happened. Well, I know, and that's admirable that you represent your client in that way, but we have to look down the road. And I'm just wondering if we say, well, this amount wasn't adequate. Well, what is adequate? And it seems to me with this very litigated, in the face of congressional language and this very preliminary stage, with a lot of things in flux, we're going to be litigating that on a case-by-case basis and say, well, what evidence did the employer have? How definite was the medical evidence? What do we think is adequate in terms of invoking the safe harbor provision? I mean, it just leads us into indeterminacy. Your Honor, I would be more concerned about the opposite. If you approve this plan by series, and I hope everyone noticed that the employer just admitted this entire scheme was just to avoid attorney's fees. That's the only reason they set this up. Why don't you need to go back to Congress to change that? If you allow this to go forward, what you're going to see is employers for a permanent total disability case where a man is owed benefits for life getting one week of compensation. This is not that. You're right, Your Honor. This is Mr. Lincoln's case. And in Mr. Lincoln's case, if the employer had accepted the claim, scheduled their independent medical exam, which I had my client attend, and paid benefits through the date of their IME, they still would have paid less than what their IME said. They could have paid that out, then cut off the compensation. Then I would have requested an informal conference to fight between the two audiograms. The system would have worked if the employer had not taken this scheme just to avoid attorney's fees. But you're arguing about how the scheme should work, in your view. I'm arguing how the statute should work, not the employer's scheme. Well, okay, I'll give you that. All I would suggest to you is that what I think you proposed to us is a different statutory scheme than the one Congress enacted. I think it's exactly what Congress enacted. If you look at 928A, the employer accepts the claim, begins making payments. 14A and 14B set out how the employer begins making payments, and this would have worked perfectly under that scheme that the Congress created. The Roberts majority didn't say it was okay in the footnote that the employer paid minimum compensation. They were pondering what would happen, and they were concerned about that outcome. They weren't saying it was okay for an employer to do it. They were pondering what would happen if that happens, and I think they'd be very concerned about this case as well. We thank you very much. Thank you. We'll come down and greet counsel and move into our next case.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Albert Diaz